Good morning. May I proceed? Yes, Your Honor. Please approach the podium. It's been a long time since I've been before the Ninth Circuit, but it's always a pleasure. Your Honors, it's really not rocket science. This was a case of a young man incarcerated in the Juvenile Hall in Orange County, and he needed mental health care, and he didn't get it. And the defense moved for summary judgment, and they said, well, we have a doctor's report that says it doesn't matter. You know, kids like this can't do anything to help them. We had a doctor's report that said that he needed mental health care, needed treatment that he wasn't getting. And the judge, for some reason, said, well, that's a legislative decision. But, of course, it's not. It's summary judgment. And there were clearly significant factual issues. The basic factual issue was whether or not he was getting care, and it was never heard. The judge just jumped over it and said, well, there are two opinions. The legislature should decide. I mean, that was the bottom line of the opinion. So I don't think it's a – I mean, I really never thought this case was rocket – well, it's difficult, but it's not rocket science. Basically, it should be reversed. That should be sent back for trial on the merits as to the mental health care that was needed and not provided. How do we deal with the district court's finding that your – the evidence you tendered was tendered procedurally improperly? By that, I mean unsworn affidavits, untimely, and so forth. Well, you know, I keep rereading the transcript. What happened was I moved for a continuance, and I said, gee, Judge, I need to respond to all this. And the judge said – this is the transcript of the August 16th hearing, and I'm not sure how it's paginated, but I'm sure it's in there. The court said at page – well, let's see, page – at page 16, which is apparently paginated as page 50, the court says at line 7, Mr. Herman, I'm going to make a court order. I will give you until one week from today, that's next Monday, to furnish to the court a short statement in opposition. The short statement in opposition to the motion for summary judgment should cite chapter and verse in the doctor's opinion or doctor's report to establish that the individual is a disabled person and that he was to establish there is a tribal issue that the person is a disabled person and is denied benefits. And I want you to cite for me where in the doctor's report that is and attach a copy of that language. Understood. Mr. Herman, exactly, Your Honor. All right. So what happened was the judge fashioned, and I appreciated it at the time, fashioned the ability for me to oppose, told me what he wanted, which was the doctor's report and defining in the doctor's report what was wrong, which I did. And then he issued an opinion that said, well, you didn't comply. Well, that's just not fair. You know, the judge should have said, all right, I want a 100 percent good, kosher response in opposition, and I'll give you a week to do it. Or, and he didn't say that. What he said was, this is what I want you to do in opposition. And that's what we did. I'm sorry, but what evidence of disability did you submit? We submitted the report of the psychiatrist who had examined this young man and who said, these are, this is what's wrong with him. Real, real psychiatric problems. And this is what needs to be done to take care of him, which they haven't done. Well, what was the precise disability? Well, he had two disabilities. He had depression, and he had what you call bad kid syndrome acting out. And he may have had post-traumatic stress syndrome as well. But the basic problem was depression. This is a young man who attempted to commit suicide on a regular basis and was punished by attempting to commit suicide on a regular basis. And we got into the federal court because what happened was when he was depressed and attempted to commit suicide, then he didn't get his educational benefits, because he couldn't go to school, because that was his punishment, and because he was clearly disabled and wasn't getting benefits under the Disabilities Act. That is, he wasn't getting treatment he needed to correct the disability. This was, this young man was, and unfortunately is, someone with serious mental health problems, which just simply weren't addressed by the people who held him in custody. So you have the three diagnoses, conduct disorder. Yes. Depressive disorder, not otherwise specified, and polysubstance abuse, right? Yes. And the only one that could be considered to qualify under the ADA is probably depression, right? I would agree with that, although conduct disorder is a very strange thing. Is there a case that says that conduct disorder is recognized as? There is not, no. And conduct disorder is always a problem. But the depressive disorder is not a problem. If you have depression and you have non-functioning depression, then you're disabled. That's a 100% good disability. Part of the report doesn't say it's depression to the point that the person can't function. It doesn't say that, but it gives the history, and the history includes multiple suicides, multiple suicide attempts. This young man is still alive, to the best of my knowledge. And the actions that he takes, which are recorded, indicate his inability to function. You can't be functioning if you're committing suicide. So it is a disability, Judge. Did you ever tender the entire report? Yes. I think the entire report is there. I would be surprised if it wasn't. But the entire report of the, was the public defender's office doctor, the doctor the public defender's office brought in, because they were, you know, quite frankly, they were very concerned. They had a young man who had been there since he was 12 years old and was there until he was 18, and who just didn't get anything like the level of treatment that he needed, which was available. I mean, you know, the doctor's report says this type of mental health problem is treatable, and this is how we treat it. Do you want to reserve some time for rebuttal? Sure. Thank you, Your Honor. Mr. Bernard? Good morning, Your Honors. May it please the Court. William Bernard on behalf of the Orange County Probation Department in the County of Orange. I'll be brief. The procedural deficiencies are clear and they're in the record. There was no opposition filed at the time of the hearing of the motion for summary judgment. Judge Taylor asked where the opposition was. There wasn't any. He then gave extended time to file one. Mr. Herman did not file one even then, filed it late, and then we got a two-page report that didn't have the doctor's signature, wasn't a sworn affidavit. And we can go on and on about the procedural deficiencies, which I think are in and of itself reason to uphold the Court's decision. But even if we get past that, the ADA and the RA claims here I think are clear in the sense that the courts have been clear that a prisoner does not have a right to make a claim that his medical care is inadequate. And I think if you look at the Fourth Amended Complaint, by the time the plaintiff got it right in terms of his pleading, it's twice I believe mentioned in paragraphs 11 and 13, if I'm correct, that he is saying he did not get adequate medical care. These two acts, the Rehabilitation Act and the ADA, recognize even a prisoner's right to not be excluded from certain activities and certain functions provided by the institution. Just a mere claim for medical malpractice does not fit within the gambit of the acts. So aside from that, I believe cases show that a prisoner's Fourteenth Amendment right is no longer valid or can no longer be claimed once he's a convicted prisoner. So if you look at the Fourth Amended Complaint, there really is no claim for cruel and unusual punishment where the deliberate indifference standard would come into play unless you look at the California constitutional claim. And that, of course, doesn't survive without a Federal claim. So the ---- Roberts. Well, you know, as I read the district court's judgment, it's ruling on the merits of the State claims. I thought, Your Honor, I believe the Court said that in its September 14th order that there could be no consideration of the State claims because there's not a Federal claim that would survive. All right. Let me find it. Go ahead. Thank you, Your Honor. Even if we could pass ---- I think what Judge Canby is referring to is the September 3rd order. I believe it's September 14th, Your Honor, is the summary judgment order. I have it here. Well, if the action be dismissed on its merits with prejudice is all that says. Well, you're right. It was docketed on the 7th. I'm sorry. The Court signed it on the 14th, I believe. And I think it talks ---- I think it's transcript page 000555 where it talks about the merits. And I believe it indicates in there that the State claims can't survive. Well. But even getting past that, there simply was no substantive evidence that was presented that showed even a level of deliberate indifference. If we want to assume that there was a claim for cruel and unusual punishment, which I don't think there was, there was nothing. When Dr. Reed testified in his declaration that he provided psychiatric counseling to the plaintiff, there was no ---- nobody refuted that. There was no claim that there was an educational deficiency or that he wasn't receiving his educational ---- what he deserved to receive in terms of his education. There was a claim, of course, by the plaintiff that he wasn't, but I took the plaintiff's deposition, which was the only deposition in the case, and he indicated, and I included it in my separate statement, that he had no problem with his educational needs. In fact, he was getting A's and B's for a while. I pointed that out. They're just simply ---- if you go from ---- if you get by the procedural deficiencies and then you analyze it under the Fourth Amendment complaint, I don't believe substantively any of these claims can survive unless you have an Eighth Amendment claim. If you want to assume there is an Eighth Amendment claim from reading the pleadings, there's no causal nexus that would show deliberate indifference. There just simply isn't, primarily because there wasn't, but also because there was no substantive evidence proffered by the plaintiff in rebuttal to the summary judgment motion. So I'm at a loss to see, both procedurally and substantively, how this case could be sent back. Thank you, Your Honor. Kennedy. I think the State law claims to which Judge Canby referred are on, at least, 085, and after describing them, the district court says the showing is that the county provides treatment services as authorized by law, and plaintiff's contention that better services could be provided does not create liability. Yes, Your Honor. So the district court did reach the merits of the State claims rather than saying they were tied to the Federal. Well ---- The heading of that paragraph is no showing of liability under State claims. You know, Your Honor, the way I read that, and I apologize, the way I read that is that the court was looking at the Federal claims and then just simply said if this was a negligence action, I suppose that plaintiff's claims could survive, but there can be no negligence claim because there is no Federal basis upon which to consider the State claims. I thought that's what I read. So if that's incorrect, I apologize. I don't think so. Actually, he cites negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, California constitutional claims. So there's a State claim of negligence. I think we're not finding what we usually see. Usually when you dismiss the Federal claims and you dismiss the State claims, you know, don't address them. Well ---- It looks like he addressed them. You know, Your Honor, I'm at such a loss to explain. Sometimes when I look at this case, I'm really at a loss to really understand how it got this far, because I think Judge Taylor went beyond the call of duty, giving the plaintiff many chances to provide some sort of evidence. And if you look at ---- if we say Dr. Bosch's report is complete, and it isn't, if we look at the two pages, she agrees with the defense's medical expert and with Dr. Reed that he has conduct disorder and he has a depression. And I ---- if we got to the merits, if we had to get to the merits of this case, I don't understand how one could look at that and say, well, that qualifies under the RA or the ADA. Right. But if you get down to a State claim of negligence, that's about the barest ---- the lowest quantum of proof, I guess you'd have to say, that of any theory asserted here, does he have enough? Does he have a State claim, Your Honor? Is that ---- I ---- well, if you're asking me to answer that question, assuming that we can get by the procedural deficiencies? Yes, because the ---- I mean, we're looking at the ---- assuming, and I think the district court did, reach the merits of the State claims. The district court exercised supplemental jurisdiction and addressed the State claims on the merits and basically lumped them all together in one paragraph and then said at the end, nothing's presented to tie the individual defendants to these claims beyond their employment with the County of Orange. The showing is that the county provides treatment services authorized by law and plaintiff's contention that better services could be provided does not create liability. That's the entirety of the district court's analysis. And I think if I remember the way the court addressed it at the time of the hearing as well was that simply claiming that your medical care is inadequate does not create a Federal claim. Now, if ---- No, we're talking about a State claim. Well, I understand that. But I don't think there was any evidence, Crawford, that showed by the plaintiff that he wasn't getting adequate medical care, so how could a negligence claim survive? There was no evidence that he wasn't getting proper care. I think what Dr. Bosch said in her report is that he should be transferred to an out-of-State facility where he could get the care that she thought he deserved. She never indicated that he didn't get proper care. She just thought he could get better care. In addition to that, I think I pointed out in my brief that the juvenile court decides where an individual is held. And the juvenile court is not part of the county of Orange or in any way affiliated with my clients. So if the juvenile court decides that someone is going to stay in juvenile hall, we can provide them the services we can provide them to the best ability that we can do so. If an outside doctor comes in who was hired by the public defender and says, we believe this person should go to an outside institution to get better care, not because the care is negligent that he's getting, but he needs better care that he can only get in a private institution, well then it seems to me it's incumbent upon the juvenile court to make a decision as to whether that individual is going to be housed at that facility. My clients don't make that decision. That evidence is unrefuted. The probation department can't make that decision and the county of Orange can't make that decision. Only the court can. So I think the key in your question with regard to the negligence claim, the State claim, if you will, is that I don't believe any evidence was proffered by the plaintiff that showed that the care he was getting was in any way negligent. Dr. Bosch indicated that she felt he could get better care at a private institution because the ‑‑ because juvenile hall was just simply not equipped to deal, in her opinion, with his illnesses. Any further questions? Yeah. Thank you, Your Honor. Thank you, Counsel. Your Honors, the ‑‑ all of the analysis having to do with prisoners, adult prisoners, is inappropriate. We're dealing with a child who went into the juvenile hall at the age of 12 and the custodial authority was the juvenile hall. That judges had ordered him in there doesn't mean that the judge was the custodian. When a judge sends someone to prison, the judge is not the custodian. The prison is the custodian. In this case, the juvenile hall was the custodian, but the adjudication that put him into the juvenile hall certainly didn't make him a sentenced prisoner in any sense of the federal law because a juvenile is different. He's not a criminal. Children in that system, children who are not tried as adults, are not criminals, period. Now, there is evidence of state treatment. I mean, they didn't just ignore him. Well, the problem was, I mean, let's assume, Your Honor, that you break your leg and someone puts a bandage on it. That's treatment, but that's negligence, and that's exactly what happened. This was the Band-Aid. They were not, this facility and the doctors and the care providers they had were not adequate to treat this young man who was severely disabled, had severe mental health problems so that he couldn't function. And that's just the bottom line, and that's what Dr. Bosch said. That is not really controverted. What happened with Dr. Nair is he said, well, it's conduct disorder, and we can't do anything with people with conduct disorder because they always have conduct disorder, and it's untreatable, which, by the way, is not true. That's, there is, there are psychiatrists who have that opinion. There are probably many more psychiatrists who have exactly the opposite opinion, and people who deal with young people who are having difficulties who say that it is addressable. So what the Court did was it adopted wholeheartedly the defense doctor's position, and that's not summary judgment. The issue is whether there was an issue of fact, and there clearly was. And I was surprised that summary judgment was the conclusion, but that was the conclusion, and we would ask the Court to overturn it and send this back so that it can be tried on the merits. Thank you, counsel. Thank you, Your Honor. The case just heard will be submitted. Yes, Your Honor. The next case on the oral argument calendar is Reed v. City of Chino.
judges: Canby, Thomas, Conlon